**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
TRUSTEES OF THE BUILDING TRADES
EDUCATIONAL BENEFIT FUND, THE
BUILDING TRADES ANNUITY BENEFIT
FUND, BUILDING TRADES WELFARE
BENEFIT FUND, AND THE ELECTRICIAN'S
RETIREMENT FUND,

                     Plaintiffs,          **REPORT AND RECOMMENDATION**

         -against-               **23-CV-188 (ARR) (ST)**

UNIFIED ELECTRIC and KENNETH D' ANNA,
INDIVIDUALLY and KENNETH D' ANNA
d/b/a UNIFIED ELECTRIC,
                     Defendants.
-------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      Plaintiffs, Trustees of the Building Trades Educational Benefit Fund, The Building Trades Annuity Benefit Fund, Building Trades Welfare Benefit Fund, and The Electrician's Retirement Fund ("Plaintiffs"), submit an application for default judgment against Unified Electric and Kenneth D' Anna, individually, and Kenneth D' Anna d/b/a/ Unified Electric ("Defendants" or "Unified") to recover unpaid fringe benefit contributions and related damages, pursuant to Section 502(g) of the Employee Retirement Income Security Act of 1974 and the provisions of Section 301 of the Labor Management Relations Act.[1]  *See* Plaintiffs' Memorandum of Law In Support of An Award of Damages ("Plaintiffs' Memo") at 1, ECF 22.  To date, Defendants have failed to appear or otherwise defend this action and Plaintiffs therefore move for Default Judgment.  *See* ECF 16 [Entry of Default].

---

[1] Note, Plaintiffs' Memo itself is not numbered so the page numbers used above are to the pdf file page numbers (i.e. pdf page 1).

The Honorable Allyne R. Ross referred this matter to the undersigned to issue a Report and Recommendation.

For the reasons set forth below, this Court respectfully recommends that the District Court grant Plaintiffs' Motion for Default Judgment, and award Plaintiffs damages totaling **$418,290.99.**

## I.    BACKGROUND[2]

### A. Factual Background

*1. The Parties*

<u>a. Plaintiffs</u>

Plaintiffs allege that the Trustees "are, at all relevant times, the fiduciaries of jointly administered multi-employer, labor management trust funds [as] defined by Section 3(21)(A) and Section 502(a)(3) of ERISA (29 U.S.C. Sections 1002(21)(A) and 1132(a)(3)." *See* Plaintiffs' Complaint at ¶ 5 ("Compl."). Plaintiffs' further allege that "[t]he Funds are established and maintained by the Union and various Employers pursuant to the terms of the Collective Bargaining Agreements and Trust Indentures." *Id.* "The Funds are employee benefit plans with the meaning of Sections 3(1), 3(2), 3(3) and 502(d)(1) of ERISA (29 U.S.C. Section 1002 3(1), 3(2), and 3(3) and 1132(d)(1) and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA (29 U.S.C. Sections 1002(37) and 1145)." *Id.* Moreover, Plaintiffs are the "Trustees of the Funds and the 'administrator' within the meaning of Section 3(16)(B)(iii) of ERISA (29 U.S.C. Section 1002(16)(B)(iii)." *Id.*

Relatedly, Plaintiffs further allege that "[t]he Funds provide fringe benefits to eligible employees, retirees and their dependents on whose behalf the Employer is required to contribute to the Funds pursuant to its Collective Bargaining Agreement (hereinafter referred to as the

---

[2] Given that Defendants have not responded to Plaintiffs' Complaint or filed any papers in this lawsuit, the factual background is solely based upon Plaintiffs' allegations in the Complaint, Plaintiffs' Memo and supporting materials.

'C.B.A.')." *Id.* at ¶ 6. "The Funds are authorized to collect contributions which include, but is not limited to, payments for annuity, educational benefits, hospitalization, and medical care on behalf of the employees of the Employer, and the Plaintiffs Trustees as fiduciaries of the Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA (29 U.S.C. Section 1132(d)(1) and are obligated to bring actions to enforce the provisions of the C.B.A. and Trust Indentures that concern the protection of employee benefit rights." *Id.*

Finally, "[t]he Plaintiff Funds' principal office is located and administered at 585 Stewart Ave., Suite 330, Garden City, NY 11530, in the County of Nassau." *Id.* at ¶ 7.

b. Defendants

Plaintiffs allege, upon information and belief, that "the Defendant, Unified Electric (hereinafter referred to as 'Unified' or 'the Employer' or 'Defendant') at all relevant times, was and is an 'Employer' within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. Sections 1002(5) and 1145)." *Id.* at ¶ 8.

Additionally, upon information and belief, "Unified is a domestic corporation doing business in the State of New York with its principal place of business located at 147 Front Street, Brooklyn, NY 11201." *Id.* at ¶ 9.

Plaintiffs further allege, upon information and belief, that "the Defendant, Kenneth D, Anna (hereinafter D' Anna) is/or was an officer, agent, partner and/or principal owner of the Unified, and is personally and individually obligated to assume all obligations of Unified." *Id.* at ¶ 10.

Finally, "[u]pon information and belief, D' Anna resides at 38 Shore Acres Rd, Staten Island, NY 10305." *Id.* at ¶ 11.

*2. Summary of Causes of Relief*

Plaintiffs allege five Causes of Relief.  The claims are summarized as follows.[3]

First Claim for Relief[4]

First, Plaintiffs allege that "[a]t all relevant times, the Employer has been a party to a C.B.A. with the United Electrical Workers of America IUJAT, Local 363 ('Union') by virtue of membership in the Building Industry Electrical Contractors Association ('Association') and through agreements made in connection with the Association ('Agreements')."  *Id.* at ¶ 12. Moreover, Plaintiffs allege that the C.B.A., Trust Indenture Agreement and Collection Policy "requires the Employer to submit contributions reports setting forth the hours that each of its employees worked and the amount of contributions due pursuant to the rate schedules set forth in the C.B.A. for all work performed by its employees covered by the C.B.A. and to remit such monetary contributions in accordance with the C.B.A. and the rules and regulations established in the Trust Indenture and Collection Policy."  *Id.* at ¶ 13.

"Pursuant to the Collective Bargaining Agreement the Employer is required to permit and cooperate with the Funds and/or their designated agents or representatives in an audit of the Employer's books and records for the purpose of ascertaining the amount of fringe benefit contributions due the Funds and verifying the accuracy of the Employer contribution reports."  *Id.* at ¶ 14.  However, "Unified has [allegedly] failed and refused to allow an audit by the Funds for the period of January 1, 2021, to date."  *Id.* at ¶ 15.

"Upon information and belief, the fringe benefit contributions are contractually due to the Funds and have not been paid by the Employer.  The Funds have been damaged in an amount to

---

[3] Note, since the First Cause of Relief sets the foundation for the others and is reincorporated in the subsequent Causes of Relief in the Complaint, the First Cause of Relief is summarized in greater depth above.
[4] The First Claim for Relief is covered in Compl. ¶¶ 12-18.

4

be determined after completion of an audit of the books and records of the Employer." *Id.* at ¶ 16.

Based upon the above, Plaintiffs further allege that "[p]ursuant to the C.B.A., the Policy for Collective of Delinquent Contributions, and trust documents upon the Employer's failure to pay contributions as they become due, the Employer is obligated [to pay] the following: the additional amount of twenty (20%) percent of the total sum of contributions due as liquidated damages; interest on the unpaid contributions for the delinquency period; audit fees, and attorneys' fees at the hourly rate charged to the Fund for such services and all costs incurred in initiating the court action for collection of delinquent contributions." *Id.* at ¶ 17.

Finally, Plaintiffs allege that "[a]ccordingly, the Employer must permit and cooperate in the conduct of an audit by the Plaintiffs and is liable to Plaintiffs for contribution reports, fringe benefit contributions plus liquidated damages, interest, audit fees and attorneys' fees in an amount to be determined by the audit." *Id.* at ¶ 18.

Second Claim for Relief[5]

Reincorporating the allegations above from the First Claim for Relief, Plaintiffs further allege that "[t]he failure to permit an audit has injured the Funds by delaying the investment of contributions and causing unnecessary administrative costs for the Funds and has injured the participants and beneficiaries and other contributing employers of the benefit plan in the form of lower benefits and higher contribution amounts." *Id.* at ¶ 24.

Based upon the above, Plaintiffs allege that "the Employer is liable to Plaintiffs under the C.B.A. and any Trust Indenture concerning the payment of fringe benefit contributions and under Sections 209, 502 and 515 of ERISA (29 U.S.C. Sections 1059, 1132 and 1145) due to the failure to permit an audit and pay contributions that are due and owing." *Id.* at ¶ 25.

---

[5] The Second Claim for Relief is covered in Compl. ¶¶ 19-26.

Finally, Plaintiffs assert that "the Employer must permit and cooperate in the conduct of an audit and is liable to the Funds in an amount to be determined by the audit which shall include liquidated damages, interest and reasonable audit fees and attorneys' fees pursuant to Section 502 of ERISA (29 U.S.C. Section 1132)." *Id.* at ¶ 26.

<u>Third Claim for Relief</u>[6]

Reincorporating the allegations above from the First and Second Claims for Relief, Plaintiffs further allege that "[t]he failure of Unified to promptly remit payment will cause Plaintiffs immediate and irreparable injury unless Unified and its officers, agents and servants are enjoined from failing, refusing or neglecting to submit the required current monetary contributions and reports to Plaintiffs." *Id.* at ¶ 30.

Based upon the above, Plaintiffs assert that they "are entitled to a permanent injunction enjoining Unified from any further or future violations of this or subsequent collective bargaining agreements with plaintiff Union, as such agreements apply to the obligations of Unified to Plaintiffs herein." *Id.* at ¶ 31.

<u>Fourth Claim for Relief Against Defendant Kenneth D'Anna, Individually</u>[7]

Reincorporating the allegations above from the First, Second and Third Claims for Relief, Plaintiffs further allege that "[b]y not permitting an audit and to the extent contributions have not been properly remitted to the Funds, D'Anna is individually and personally liable for the violations of ERISA Section 404 described herein, 29 U.S.C. Section 1104." *Id.* at ¶ 40. Additionally, Plaintiffs assert that "[t]o the extent contributions have not been properly remitted to the Funds, D'Anna would be in violation of ERISA Section 404(a)(1), 29 U.S.C. Section 1104(a)(1)(A) for retaining monies that were rightful assets of the Funds." *Id.* at ¶ 41.

---

[6] The Third Claim for Relief is covered in Compl. ¶¶ 27-31.
[7] The Fourth Claim for Relief is covered in Compl. ¶¶ 32-43.

"To the extent contributions have not been properly remitted to the Funds, D'Anna would be in violation of ERISA Section 404(a)(1)(D), 29 U.S.C. Section 1104(a)(1)(D)." *Id.* at ¶ 42.

Finally, Plaintiffs allege that "[a]s a result of the breaches of fiduciary duty described above, D'Anna is liable to the Funds for noncompliance with the audit and for any contributions found to be owed as a result of the audit plus interest, liquidated damages, attorney fee, audit fees, the costs and fees of collection and he must singly and jointly turn over to the Funds said converted assets." *Id.* at ¶ 43.

<u>Fifth Claim for Relief Against Defendant Kenneth D'Anna, Individually</u>[8]

Reincorporating the allegations above from the First, Second, Third and Fourth Claims for Relief, Plaintiffs further allege that "D'Anna failed and refused to comply with an audit in accordance with the CBA, Collection Policy and Trust Indentures." *Id.* at ¶ 49. "By not permitting an audit and to the extent contributions have not been properly remitted to the Funds, D'Anna is individually and personally liable for the contributions owed." *Id.* at ¶ 50.

Finally, Plaintiffs allege that "to the extent Unified Electric is unincorporated, D'Anna is liable to the Funds for noncompliance with the audit and for any contributions found to be owed as a result of the audit plus interest, liquidated damages, attorney fee, audit fees, the costs and fees of collection and he must singly and jointly turn over to the Funds said converted assets." *Id.* at ¶ 51.[9]

---

[8] The Fifth Claim for Relief is covered in Compl. ¶¶ 44-51.

[9] Plaintiffs seek Judgment against the Defendants for all the Claims for Relief and request: "(a) Order requiring Unified to permit and cooperate in an audit of its books and records by the Plaintiffs or its agents for the period of January 1, 2021, to date; (b) Judgment against the defendants for any monies found due and owing as a result of the audit of Unified's books and records which shall include the principal amount due plus interest, liquidated damages, audit fees and reasonable attorney's fees and the cost of the audit as provided for in the C.B.A. and/or Trust Indenture; (c) Court costs and disbursements as stated in Plaintiff's Policy for Collection of Delinquent Contributions and as mandated by Section 502(g)(D) of ERISA, 29 U.S.C. Section 1132(g)(2)(D) and the C.B.A.; and (d) For such other and further relief as to the Court deems appropriate." *See* Compl. at pages 9-10.

**B. Procedural History**

On January 11, 2023, Plaintiffs filed their Complaint in the instant action. *See* ECF 1.

A copy of the Summons and Complaint was served on the Defendant, Unified, on January 25, 2023, with proof of service filed with the Court on February 1, 2023, and on Defendant, Kenneth D'Anna individually and Kenneth D'Anna d/b/a/ Unified Electric on January 18, 2023, with proof of service filed with this Court on January 20, 2023. *See* ECF 6-8.

On February 28, 2023, this Court issued an Order providing that "[t]he time for Defendants to respond to the complaint has passed and there has been no further activity in this case. Accordingly, counsel for Plaintiff shall file a status report or request a Certificate of Default from the Clerk of Court by March 15, 2023." *See* ECF Entry dated February 28, 2023.

After Plaintiffs provided multiple status reports, this Court issued a subsequent Order on June 21, 2023 providing that "[i]n light of Defendants' failure to answer or otherwise respond to the complaint, Plaintiff shall request a Certificate of Default from the Clerk of Court by July 5, 2023." *See* ECF Entry dated June 21, 2023. Plaintiffs requested the Certificate of Default on June 22, 2023. *See* ECF 15.

The Clerk's Entry of Default was filed on June 26, 2023 and the ECF entry provided that it appeared from the docket that Defendants have "failed to appear or otherwise defend this action. . . ." and that the Defendants' default was "noted pursuant to Rule 55a of the Federal Rules of Civil Procedure." ECF 16.

On September 27, 2023, Plaintiffs filed the instant Motion for Default Judgment ("Motion") with supporting materials. *See* ECF 18-23.[10]

---

[10] Plaintiffs also previously notified the District Court of this Motion via a status report on August 22, 2023. *See* ECF 17.

On September 28, 2023, the Honorable Allyne R. Ross referred the instant Motion to the undersigned to issue a Report and Recommendation.  See ECF entry dated September 28, 2023. *See also* ECF Entry dated September 28, 2023.

To date, Defendants have not answered or otherwise moved with respect to Plaintiffs' Complaint.  The time for Defendants to do so has expired and has not been extended by the Court.

## II.    JURISDICTION

Jurisdiction is conferred upon this Court under Sections 502(e)(1) and 502(f) of ERISA (29 U.S.C. Sections 1132(e)(1) and 1132(f)) and derivative jurisdiction is contained in 28 U.S.C. Sections 1331 and 1337.

## III.    LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure calls for a two-step process for obtaining a default judgment.  *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011).  First, the plaintiff must request entry of default by the Clerk of the Court.  *Id.* (citing Fed. R. Civ. P. 55(a)).  Second, "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."  *See* Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  *See also* Local Civil Rule 55.2 [Default Judgment].

Once the plaintiff meets these requirements, the court must accept the factual allegations in the plaintiff's complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  Then, the court must determine whether these facts establish the Defendants' liability as a matter of law.  *City of N.Y. v. Mickalis Pawn*

*Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citations omitted). The court, however, "need not credit the plaintiff's legal conclusions." *Gustavia Home, LLC v. White*, No. 116CV06926CBARER, 2017 WL 6403071, at *2 (E.D.N.Y. Apr. 28, 2017), *report and recommendation adopted*, No. 16CV6926CBARER, 2017 WL 6403858 (E.D.N.Y. Dec. 14, 2017) (internal citations omitted).

Unlike allegations pertaining to liability, allegations in the complaint relating to damages are not deemed admitted upon entry of default; instead, the court considers whether the plaintiff "has met the burden of proving damages to the court with 'reasonable certainty.'" *J & J Sports Prods., Inc. v. LX Food Grocery Inc*., No. 15CV6505NGGPK, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). A court need not conduct an evidentiary hearing to determine damages "as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc*., 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Services, Inc*., 873 F.2d 38, 40 (2d Cir. 1989)). "Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." *Llolla v. Karen Gardens Apartment Corp*., No. 12-CV-1356 MKB JO, 2014 WL 1310311, at *3 (E.D.N.Y. Mar. 10, 2014), *report and recommendation adopted as modified*, No. 12-CV-1356MKB, 2014 WL 1311773 (E.D.N.Y. Mar 28, 2014) (internal citations omitted).

## IV. DISCUSSION

### A. Liability

While a full discussion concerning liability is not necessary since Plaintiffs' factual allegations should be deemed admitted at the default stage, this Court will review the liability

arguments raised in Plaintiffs' Memo for comprehensiveness.[11]  Ultimately, this Court concludes that liability is established based upon Defendants' default.

### 1. This Court Concludes That Defendant Unified is an Employer Within the Meaning of Section 3(5) and 515 of ERISA, 29 U.S.C. 1002(5) and 1145 For Liability Purposes

This Court concludes that Plaintiffs sufficiently allege that Defendant Unified is an employer within the meaning of Section 3(5) and 515 of ERISA, 29 U.S.C. 1002(5) and 1145 for default liability purposes.

Under 29 U.S.C. § 1002(5), "[t]he term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity."  Unified is the employer under its collective bargaining agreement, which contains the express obligation to contribute to the Plaintiffs' funds.  *See* Plaintiffs' Memo at pdf page 3; Affidavit of Kevin Chavarria, dated September 27, 2023 ("Chavarria Aff."), Ex. A [Collective Bargaining Agreement] ("CBA"), ECF 21-1.

Under ERISA, 29 U.S.C. § 1145, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  Multiple courts have held that this provision of ERISA creates an independent federal right of action over and above the contract that the duty to contribute is based upon.  *See Benson v. Brower's Moving & Storage Inc.*, 907 F.2d 310, 313-14 (2d Cir.), *cert. denied*, 498 U.S. 982 (1990) ("[O]nce an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as

---

[11] Note, the Court will review Plaintiffs' liability arguments in the order that they are presented in Plaintiffs' Memo.

a whole"); *Bituminous Coal Operators' Ass'n v. Connors*, 867 F.2d 625, 633 (D.C. Cir. 1989) ("Section 515, like other provisions of ERISA, creates a federal right of action independent of the contract on which the duty to contribute is based and may be enforced by an action brought in the district court.")[12]; *Trustees of Bricklayers & Allied Craftworkers v. Charles T. Driscoll Masonry Restoration Co.*, 165 F. Supp. 2d 502, 509 (S.D.N.Y. 2001) ("Section 515 creates a federal right of action independent of the contract on which the duty to contribute is based.") (citations omitted).[13]

Again, as noted above, Unified is the employer under the CBA and has the express obligation to contribute to the Plaintiffs' funds. *See* Plaintiffs' Memo at 3; Chavarria Aff., Ex. A [CBA], ECF 21-1. Moreover, Defendant "Kenneth D' Anna is listed as the officer of Unified on the second page of the Membership Application and Designation of Bargaining Representative." *See* Plaintiffs' Memo at 3 (citing Chavarria Aff., Ex. B) [Membership Application and Designation of Bargaining Representative] at pdf page 4, ECF 21-2. Finally, Defendants have not challenged any of these allegations or arguments from Plaintiffs. Therefore, this Court concludes that liability is established on the assertion that Defendant Unified is an employer within the meaning of ERISA, 29 U.S.C. §§ 1002(5) and 1145.

*2. This Court Concludes That Plaintiffs are Entitled to an Award of the Unpaid Fringe Benefit Contributions for Liability Purposes*

This Court further concludes that Plaintiffs are entitled to an award of the unpaid fringe

---

[12] Note, while *Bituminous Coal Operators' Ass'n* is from the D.C. Circuit, the case appears to be cited across jurisdictions upon the Court's review of the pertinent case law and this Court also notes that the case is cited in Plaintiffs' Memo at pdf page 3. Hence, this Court included the case in the discussion above.

[13] Note, *Trustees of Bricklayers*, 165 F. Supp. 2d at 509 also cites the central case *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) for the relevant proposition that "Section 515 places employee benefit plans in a position superior to the original promisee, analogous to a holder in due course, by limiting the defenses available to an employer when sued by an employee benefit plan." *Id.* Additionally, *Trustees of Bricklayers* also cites an example of a case distinguishing the *Benson* decision, *DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 653-54 (2d Cir. 1994). *Id.* In *DeVito*, as a result of an ambiguity in the Agreement, the parties disputed an employer's obligation to pay benefits to a union health fund. *Id.* Unlike *Benson*, where the parties knowingly signed an agreement that obligated defendant to contribute to an employee benefit plan, in *DeVito*, there was an underlying question about the validity of the Agreement itself. *Id.* Here, however, there is no such question about the validity of the CBA or any ambiguity in Plaintiffs' allegations at the default stage.

benefit contributions and that liability for these damages has been established at the default stage. Plaintiffs' Memo at 4 correctly notes that "[w]here a fiduciary of a multiemployer plan brings an action to enforce an employer's obligation to make contributions under 29 U.S.C. § 1145, and the plan recovers judgment in its favor, the plaintiff is entitled to have the defendant pay the full amount of unpaid contributions." Specifically, the award provision of ERISA pursuant to 29 U.S.C. § 1132(g)(2)(A), provides as follows:

> (g) … awards in actions involving delinquent contributions

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

> (A) the unpaid contributions. . .

Here, Plaintiffs' Mot. includes the business records of the Funds in support of the Funds' claim for damages as well as the audit results. Specifically, Plaintiffs have provided the Chavarria Aff., and the Affidavit of Alan Rossi, dated September 26, 2023 ("Rossi Aff."), ECF 20 and 21, pursuant to 28 U.S.C. § 1746 and E.D.N.Y. Local Civil Rule 1.9.[14]

Importantly, multiple courts have held that once Plaintiffs establish the total amount of fringe benefits owed, the burden then shifts to Defendants to produce evidence challenging Plaintiffs' calculations. *See, e.g.*, *Sheet Metal Workers' Nat. Pension Fund v. Accra Sheetmetal, LLC*, 993 F. Supp. 2d 245, 249 (E.D.N.Y. 2014) (quoting *Loc. 282 Welfare Tr. Fund v. A. Morrison Trucking, Inc.*, No. CV-92-2076(JMA), 1993 WL 120081, at *1 (E.D.N.Y. Mar. 30, 1993)) (the burden of proof in an ERISA action lies first with the Plaintiff Benefit Funds to "establish a prima facie case by demonstrating the inaccuracy of the employer's contributions" but then once the

---

[14] As discussed *infra*, Plaintiffs submit that "Defendants have failed and refused to make payment to the Funds for outstanding and unpaid fringe benefit contributions, in the principal sum totaling $296,145.11 based on an audit." *See* Chavarria Aff. at ¶ 5, ECF 21; Rossi Aff. at ¶ 7 and Rossi Aff. Ex. A [Audit], ECF 20-1.

Funds produce this evidence, the burden then shifts to the employer)[15]; *Hanley v. Orient Beach Club, Inc.*, No. 96 CIV. 4478(AJP) MGC, 1998 WL 65990, at *6 (S.D.N.Y. Feb. 18, 1998) ("I agree with the reasoning of *Grabois v. Action Acoustics* and will apply the burden shifting analysis in further proceedings in this case."); *New York State Teamsters Council Health & Hosp. Fund v. Est. of DePerno*, 18 F.3d 179, 182 (2d Cir. 1994) ("In the law of trusts, however, it has been held that once the beneficiaries have established their prima facie case by demonstrating the trustees' breach of fiduciary duty, the burden of explanation or justification ... shift[s] to the fiduciaries.") (internal quotations and citations omitted).

Because Defendants here have failed to answer Plaintiffs' Complaint or otherwise move in this action and provide any counter documentation, this Court concludes that liability has been established with respect to Defendant Unified and that damages are proper. Thus, the only remaining issue for Defendant Unified is to determine the *amount* of damages from Plaintiffs' records provided. Before doing so, however, this Court will provide its basis below for concluding that *individual* liability has been established against Defendant Kenneth D'Anna as well.

   a.   This Court Concludes That Plaintiffs' Allegations Are Sufficient to Find Personal
        Liability Against Defendant Kenneth D'Anna as a Fiduciary

This Court concludes that Plaintiffs' allegations are sufficient to establish personal liability against Defendant D'Anna individually as well. To establish individual liability for a defendant as a fiduciary for unpaid contributions to an ERISA fund, Plaintiffs must show that: (1) the unpaid contributions were plan assets; and (2) the individual defendant exercised a level of control over those assets sufficient to make him or her a fiduciary. *See In re Halpin*, 566 F.3d 286, 289 (2d Cir.

---

[15] Note, this Court is aware of the precedent *Silverman v. Mut. Ben. Life Ins. Co*., 138 F.3d 98, 106-07 (2d Cir. 1998) (Jacobs concurrence) which held that causation of damages is an element of a co-fiduciary breach claim under ERISA, and that plaintiff bears the burden of proving it. However, that case did not involve a default judgment and here there is only a question of damages since liability has been established for purposes of default.

2009).  In *in re Halpin*, the Second Circuit provided, as a general rule, that unpaid employer contributions only become "plan assets" for ERISA purposes "after being paid" to the fund.  *Id.* at 290.  Unless that occurs, such obligations to make contributions are only ordinary debts, and not plan assets.  *Id.*

Notably, however, *In re Halpin* further provides that the parties establishing the fund may enter into a contract that provides otherwise.  *Id.* at 287 ("*[I]n the absence of provisions to the contrary* in the relevant plan documents, unpaid contributions are not assets of the plan.") (emphasis added); *see also Sheet Metal Workers' Nat. Pension Fund v. AUL Sheet Metal Works Inc.*, No. 10 CIV. 1371 KBF, 2012 WL 32237, at *4 (S.D.N.Y. Jan. 5, 2012) ("The Second Circuit in *Halpin* is clear, however, that its holding and the Department of Labor's general interpretation only apply *in the absence of a specific contractual provision to the contrary*. . .") (emphasis added).

Relatedly, multiple New York courts have consistently held that a company's unpaid debt to an ERISA fund constitutes an asset of that fund when the applicable agreement states that such debts are fund assets.  *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (holding contributions were designated as plan assets under the trust documents); *Trustees of the Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Sav. Plan v. Philip Gen. Const.*, No. 05CV1665(NG)(RLM), 2007 WL 3124612, at *5 (E.D.N.Y. Oct. 23, 2007) ("Delinquent contributions to a benefit fund are fund assets if so defined in the agreement creating the fund.").

Importantly here, the CBA, ECF 21-1, plainly states in Article 23, at A.3, page 18 that:

"Employer contributions become vested plan assets at the time they become due and owing to the above- referenced Funds.  All contributions from an Employer shall, after their due date and until payment in full by the Employer to the Funds,

be deemed to constitute plan assets of a trust fund in the possession of such Employer."

As mentioned *supra*, because Defendant Kenneth D'Anna has personally failed to answer Plaintiffs' Complaint or otherwise move in this action, this Court concludes that personal liability has been established.   Specifically, this Court agrees with Plaintiffs' Memo at 7 that: "The allegations in the complaint and evidence presented herein amply support the conclusion that D'Anna meets the definition of an employer as aforementioned and controlled the assets of Bridge. Pursuant to the Assumption Agreement and Membership Agreement, D'Anna is an owner/officer of Unified which provides proof of [Defendant D'Anna's] substantial role in Unified's affairs." (citing Chavarria Aff., Ex. B [Assumption Agreement], ECF 21-2).   Hence, like Defendant Unified, the only remaining issue is to determine the sufficiency of Plaintiffs' evidence for the *amount* of damages.

### B. Damages

This Court concludes that Plaintiffs are entitled to an award of damages totaling **$418,290.99** for the reasons discussed *infra*.   As liability has been established, this Court must now ascertain damages with "reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *OneWest Bank, N.A. v. Denham*, No. CV 14-5529 DRH AKT, 2015 WL 5562980, at *8 (E.D.N.Y. Aug. 31, 2015), *report and recommendation adopted*, No. 14 CV 5529 DRH AKT, 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015) ("Although a default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability, a plaintiff must still prove damages.").

To prove damages, the movant need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992).  An evidentiary hearing is not required

so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (internal citations and quotations omitted); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).

    *1. This Court Concludes That Plaintiffs are Entitled to an Award of the Unpaid Contributions, Interest and Liquidated Damages*

    This Court concludes that Plaintiffs are entitled to an award of the unpaid contributions, interest and liquidated damages. Under the below statutory framework, this Court will now review each category of Plaintiffs' requested damages in greater depth. Specifically, the award provision of ERISA provides the following in 29 U.S.C. § 1132(g)(2)(A)-(C):

    (g) . . . awards in actions involving delinquent contributions

***

  (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

    (A) the unpaid contributions,

    (B) interest on the unpaid contributions, and

    (C) an amount equal to the greater of --

      (i)    interest on the unpaid contributions, or

      (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A). . . [16]

---

[16] Indeed, courts in this District have awarded the combination of remedies Plaintiffs seek here in the default context. *See, e.g.*, *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 289-91 (E.D.N.Y. 2010); *Trustees of Loc. 813 I.B.T. Ins. Tr. Fund v. City Waste Servs. of New York*, No. 07CV652(FB)(CLP), 2007 WL 2126082, at *1 (E.D.N.Y. July 24, 2007).

a. *Unpaid Contributions*

First, Plaintiffs seek damages for the principal benefit contribution amount due. *See* ECF 23 [Statement of Damages]. Plaintiffs submitted the Rossi Aff. which is from Alan Rossi, the auditor who performed the audit "to evaluate Unified's compliance with its obligations under its collective bargaining agreement. . ." *See* Rossi Aff. at ¶ 1, ECF 20. Specifically, Rossi "performed an examination of the hourly fringe benefit contributions and deductions remitted by Unified for work by its employees for the period of January 1, 2021, through November 30, 2022." *Id.* at ¶ 4. Moreover, the Rossi Aff. attaches the Audit itself as Ex. 1. *See* ECF 20-1. The Audit provides on page 3 that the "Total Net Findings During Audit Period" are $296,145.11, which matches Plaintiffs' requested amount in Plaintiffs' Memo at 9 and Plaintiffs' Statement of Damages at ECF 23. Hence, this Court recommends that Plaintiffs be awarded **$296,145.11** in unpaid contributions.

b. *Interest*

Second, this Court concludes that Plaintiffs are entitled to interest as well. The Rossi Aff. at ¶ 8 provides that "[t]he interest for the audit period of January 1, 2021, through to November 30, 2022, is $59,736.78. The interest was calculated through August 11, 2023, and by using the primate rate plus two percent (2%) for the month the contributions were owed and compounded monthly." *Id.* (citing ECF 20-2 [page 2, Section 2, paragraph 3 of the Collection Policy, ECF 20-2].[17] Finally, the Rossi Aff. at ¶ 8 provides a detailed breakdown of the audit interest calculations month-by-month for the relevant period, which this Court concludes is sufficient documentary evidence for damages. Thus, this Court recommends awarding **$59,736.78** in interest.[18]

---

[17] Presumably, the Rossi Aff. at ¶ 8 intended to convey that some interest included in the total was calculated *past* the audit period ending November 30, 2022 through August 11, 2023 (the month before the Rossi Aff. was filed). Given Defendants' failure to respond to Plaintiffs' action to date or pay any contributions, and the precision of Plaintiffs' interest records, this Court recommends awarding the full interest request through August 11, 2023.

[18] Note, this Court recognizes the line of EDNY precedent which provides that "[c]onsistent with this statute, courts deciding damage awards in ERISA cases routinely calculate prejudgment interest from a midpoint date in the delinquency period. . ." *See, e.g., Alston v. Northstar La Guardia LLC*, No. 10 CIV 3611 LAK GWG, 2010 WL

c.  *Liquidated Damages*

Third, this Court also concludes that liquidated damages are appropriate under the CBA, collection policy and 29 U.S.C. § 1132(g)(2)(C) discussed above.  Specifically, Unified is required to pay liquidated damages under the plan totaling twenty percent (20%) of the unpaid contributions, which totals $59,229.02.  *See* Chavarria Aff. at ¶¶ 4-5, ECF 21.  Indeed, courts in this District have awarded damages for this same combination of categories (unpaid contributions, interest and liquidated damages) as Plaintiffs seek here.  *See, e.g.*, *Mason Tenders Dist. Council Welfare Fund v. Shelbourne Constr. Corp.*, No. 19-CV-7562 (AJN), 2020 WL 7028530, at *7-8 (S.D.N.Y. Nov. 30, 2020); *Finkel v. E. End Elec. Assocs.*, Ltd., No. 06CV2169(FB)(RML), 2007 WL 74303, at *2 (E.D.N.Y. Jan. 8, 2007).  Thus, this Court recommends an award of liquidated damages totaling **$59,229.02.**[19]

2.  *This Court Concludes That Plaintiffs are Entitled to an Award of Reasonable Attorneys' Fees and Costs*

This Court also concludes that Plaintiffs are entitled to an award of reasonable attorneys' fees and costs.   The ERISA award provision provides the following under 29 U.S.C. § 1132(g)(2)(D):

(g) Attorneys' fees and costs; awards in actions involving delinquent contributions

***

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall

---

3432307, at *3 (S.D.N.Y. Sept. 2, 2010) (collecting cases for same proposition).  However, the Court in *Alston* also noted that the reason it used the intermediate date is because "Alston has not provided a breakdown of the individual amounts that were due during the period at issue so that the 18 percent interest rate could be figured on each amount. *Nor is he required to do so*." *Id.* (emphasis added).  Conversely here, Plaintiffs *did* provide a breakdown as discussed above so this Court will use Plaintiffs' thorough interest calculations.

[19] To be clear, this Court recognizes that the statutory language in 29 U.S.C. § 1132(g)(2)(C) provides that Plaintiffs may recover: "an amount equal to the *greater of* (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent. . ." (emphasis added).  However, pages 20-21 of the CBA do not use the "greater of" language and instead simply list the different categories that Defendants must pay.  *See* ECF 21-1.  This likely explains why Plaintiffs here request the *lower* amount of 20% of the deficiency as liquidated damages, $59,229.02, rather than a second payment of the slightly higher interest amount of $59,736.78.

award the plan -

*** 

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant. . .

Numerous courts have recognized under the award provision of ERISA, 29 U.S.C. § 1132(g)(2)(D), that in an action to recover unpaid fringe benefit contributions, an award of reasonable attorneys' fees and costs "to be paid by the defendant" is mandatory. *See, e.g.*, *Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995) ("Congress thereby made the award of attorney fees mandatory for suits involving delinquent employers . . . and added the current slate of mandatory penalties to be assessed in favor of a plan obtaining a favorable judgment.") (citations omitted); *Loc. 445 Welfare Fund v. Wein*, 855 F.2d 62, 65 n.2 (2d Cir. 1988) ("A number of courts have construed Section 1132(g)(2) to mean that an award of attorney's fees is mandatory when plaintiffs prevail.") (citations omitted); *Benson v. Brower's Moving & Storage, Inc.*, 726 F. Supp. 31, 33 (E.D.N.Y. 1989), *aff'd*, 907 F.2d 310 (2d Cir. 1990) (same); *see also* Plaintiffs' Memo at 10 (collecting cases for same proposition).

The attorneys' fee provision is intended "to penalize the delinquent payor for imposing the necessity of a suit to collect." *See DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1042 (E.D.N.Y. 1993) (reversed on other grounds). *See also Trustees of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. Tiki Indus., Inc.*, No. 19CV3295SJFARL, 2021 WL 242266, at *5 (E.D.N.Y. Jan. 25, 2021) (citing *Richardson v. Laws Constr. Corp.*, 557 F. App'x 57, 59 (2d Cir. Feb. 13, 2014) (summary order) ("When trustees prevail in an ERISA action for unpaid contributions, 29 U.S.C. § 1132(g)(2)(D) mandates an award of 'reasonable attorney's fees and costs of the action, to be paid by the defendant' ")).

20

Here, Plaintiffs brought suit against Defendants under 29 U.S.C. § 1132(g)(2) to enforce Defendants' obligations under 29 U.S.C. § 1145 and the Defendants' CBA. Therefore, this Court agrees with Plaintiffs that the attorneys' fees award is mandatory. *See* Plaintiffs' Memo at 11 (citing *Devito*, 831 F. Supp. at 1042) ("Since the Court has no discretion to do otherwise, there is no need for any analysis of the *Chambless* factors").[20] Therefore, the remaining issue is to assess a reasonable amount of attorneys' fees and costs.

Plaintiffs' counsel submitted an attorney affirmation with supporting documentation. *See* Affidavit of Danielle M. Carney, Esq., dated September 26, 2023, ECF 19 ("Carney Aff."). The Carney Aff. at ¶ 12 calculated the total reasonable attorneys' fees as $2,500.00 (10.0 hours x $250 per hour).[21] Plaintiffs' counsel also submitted contemporaneous time entries kept by plaintiffs' counsel's law firm which include the date, the hours expended and the nature of the work done. *See* Carney Aff. Ex. D., ECF 19-4 [Timesheet]. Hence, this Court recommends a reasonable attorneys' fees award of **$2,500.00**.[22]

Finally, Plaintiffs' Statement of Damages, ECF 23, also requests reimbursement for the filing fee of $400.00 and process server fee of $208.08. This Court recommends awarding both of these expenses based upon the documentation provided. First, ECF 1 provides that the filing fee of the Complaint is consistent with Plaintiffs' request.[23] Hence, this Court will recommend the

---

[20] Plaintiffs' Memo at 11 also cites multiple other cases for this same proposition.

[21] Note, Plaintiffs' Memo at 10 states the attorneys' fees were $2,000, but this appears to be a typographical error because both the Carney Aff. at ¶ 12 and Plaintiffs' Statement of Damages at ECF 23 request $2,500.00.

[22] To the extent that Plaintiffs seek leave to file additional motions for attorneys' fees "in the event that Plaintiffs may be required to incur additional fees and costs in connection with this fee application, based on any opposition to this motion by [Defendants]. . .", *see* Plaintiffs' Memo at 11-12 (citing Fed. R. Civ. P. 54(d)(2) and *Weyant v. Okst*, 198 F.3d 311, 314 (2d Cir. 1999), this Court declines to grant unlimited leave, but will recommend that Plaintiffs be allowed to file any supplemental attorneys' fees applications within fourteen (14) days of *final judgment* in this action consistent with Fed. R. Civ. P. 54(d)(2)(B). Whether a specific future hypothetical action from Defendants' delays entry of final judgment that would allow for Plaintiffs to file supplemental attorneys' fees applications, or additional time would be appropriate, cannot be determined at this time. However, this Court does conclude that Fed. R. Civ. P. 54(d)(2)(B) should be used to allow for such leave when appropriate.

[23] To be clear, ECF 1 states the Complaint had a filing fee of $402.00, but this Court will recommend awarding Plaintiffs' requested amount of $400.00.

**$400.00** that Plaintiff requests.  Additionally, this Court recommends awarding the process server fee of **$208.08** as well based upon the receipts provided in ECF 19-3 [Process Server Bills].

## V.  CONCLUSION

For the foregoing reasons, this Court recommends that Plaintiff be awarded the amount of **$418,290.99,** which consists of (1) $296,145.11 for the principal benefit contribution amount due; (2) $59,736.78 in interest; (3) $59,229.02 for the liquidated damages calculated at 20% of benefit contribution; (4) $2,500.00 for reasonable attorneys' fees pursuant to the Collective Bargaining Agreement; (5) $400.00 for the filing fee; (6) $280.08 for the process server fee.  Plaintiff is directed to serve a copy of this Report and Recommendation upon all Defendants at their respective last known addresses via return receipt delivery and to file proof of service with the Court within three (3) days of the date of this Report and Recommendation.

## VI.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.,* 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.,* 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-

CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn,* 474 U.S. 140 (1985).

**SO ORDERED.**


/s/ Steven Tiscione
Steven Tiscione
United States Magistrate Judge
Eastern District of New York


Dated: Central Islip, New York
March 14, 2024